IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

GRACE L. MOORE,                  )
                                 )
Plaintiff,                       )
                                 )        CIVIL ACTION NUMBER
v.                               )
                                 )        No. 2:06-CV-1144-MHT
CNA FOUNDATION,                  )
                                 )
Defendant.                       )

## PLAINTIFF'S MOTION TO REMAND

Comes Now the Plaintiff to move for an order remanding this proceeding to the state court from which it was removed.

## Rules of Decision

Federal diversity jurisdiction obtains in a case removed from state court if the parties are diverse and the amount in controversy exceeds $75,000.  28 U.S.C. § 1332(a).  Those facts or conditions must be proven by the removing defendant, else federal jurisdiction is absent.  Leonard v. Enterprise Rent-A-Car, 279 F.3d 967 (11th Cir. 2002); Univ. of South Alabama. v. Am. Tobacco Co., 168 F.3d 405 (11th Cir.1999); Burns v. Windsor Ins. Co., 31 F.3d 1092 (11th Cir.1994).  The removing defendant must prove them by a preponderance of the evidence.  E.g., Lowery v. Honeywell Int'l, Inc., ___ F.Supp.2d ____, No. 06-AR-1370-S, U.S. Dist. Ct., N.D. Ala., Memorandum Opinion, Oct. 24, 2006 (attached here as **Exhibit A**), p. 17 (citing

Leonard, 279 F.3d at 972).

<u>**Argument**</u>

1.    **JURISDICTION IS ABSENT BECAUSE THE DEFENDANT IS NOT DIVERSE.**

The Defendant is a citizen of Alabama within the meaning of 28 U.S.C. § 1332(c)(1).  It is the insurer of the Plaintiff's employer, from whom she won a judgment for workers compensation.  Complaint at p. 1, ¶ 1; **Exhibit B** (judgment of Dec. 16, 1987, in <u>Moore v. Coastal Industries, Inc.</u>, Civil Action No. CV 87-1985-PR).  The employer is the insured.  **Exhibit C** (correspondence showing "COASTAL IND INC" as the insured).  It is not joined in this suit as a party-defendant.  The employer is or was a citizen of Alabama, according to the Plaintiff's information.  **Exhibit D**.  To be sure, the Defendant has not proven otherwise, which is its burden.  Because of that failure of proof, the plain language of 28 U.S.C. § 1332(c)(1) operates and establishes the non-diversity of the parties.  The code section states:

> [A] corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business, except that in any direct action against the insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of the State of which the insured is a citizen, as well as of any State by which the insurer has been incorporated and of the State where it has its principal place of business.

The Defendant admits the Plaintiff is a citizen of Alabama.  Notice of Removal

2

at p. 1, ¶ 2 (Dec. 27, 2006)).  The parties therefore share Alabama citizenship, and

absent diversity, there is no federal diversity jurisdiction.

**2.    THE DEFENDANT'S CURSORY REFERENCE TO DAMAGES AWARDED IN CASES THAT ARE NOT IDENTICAL TO THIS CASE CANNOT SATISFY ITS BURDEN TO PROVE THE JURISDICTIONAL AMOUNT.**

The Complaint does not state an amount of damages sought.  Therefore, the

Defendant must prove that more than $75,000 is in controversy.  That rule is settled.

"[W]hen a state court complaint is uncertain or silent on the amount being sought,

the removing defendant under 28 U.S.C. § 1332 has the burden of proving the

jurisdictional amount by a preponderance of the evidence."  <u>Lowery</u>, <u>ante</u> (citing

Leonard, 279 F.3d at 972); <u>accord</u> <u>Tedder v. Liberty Mutual Ins. Co.</u>, 2006 WL

3364004 at *1 (M.D. Ala. Nov. 20, 2006) ("A removing defendant has the burden of

proving that the more-than-$75,000 amount-in-controversy requirement for

diversity jurisdiction is met . . .  Here, the conclusory allegation in the notice of

removal . . . is therefore insufficient to satisfy this burden by a preponderance of

evidence.").

The Defendant asks the Court to forgo a test of the record to determine if it,

the Defendant, has proven the jurisdictional amount.  It urges the Court to accept

in lieu of such a finding the sums of money awarded in other Alabama tort cases.

Notice of Removal at pp. 2-3, ¶7 (Dec. 27, 2006).  That effort is unavailing, even

3

assuming that a removing defendant properly may offer such a cursory comparison as proof of the jurisdictional amount.[1]  The cases the Defendant cites are not identical to this case – factually, legally, or both.  Also, one of the cases it cites (Youngblood) does not support its assertion that the final judgment in that case shows by comparison that an amount more than $75,000 is controverted here.  See Youngblood v. Lawyers Title Ins., 923 F.2d 161 (11th Cir. 1991) (reversing award of damages and remanding for entry of judgment for the defendant).

### A.    The Cases the Defendant Cites Are Not Factually Identical to This Case.

Travelers Indem. Co. of Illinois v. Griner, 809 So.2d 808 (Ala. 2001), is the case the Defendant cites that is closest to this case in terms of the claims and facts involved.  But the Defendant is not clairvoyant, so it cannot confidently forecast that an Alabama jury would award damages here similar in amount to those awarded in Griner.  The Griner defendant was found to have wrongfully refused to pay benefits to the plaintiff for five years in a contumacious bid to coerce him into

---

[1]  The Plaintiff does not concede that the cursory effort is a proper means of proving the jurisdictional amount.  Controlling authority requires a greater and more specific showing.  "A conclusory allegation in the notice of removal that the jurisdictional amount is satisfied, without setting forth the underlying facts supporting such an assertion, is insufficient to meet the defendant's burden."  Williams v. Best Buy Company, Inc., 269 F.3d 1316, 1319-20 (11th Cir.2001); accord Tedder, ante.

compromising his rights, causing him pitiless mental and physical suffering as a result. Id. at 811-12. He refused to knuckle under, sued, and won.

The allegation here, measured purely in terms of time, is a refusal to pay benefits for approximately one year,[2] obviously shorter than the five years in Griner. That shorter period of time may be relevant, particularly to an Alabama appeals court that reviews any jury award (or other judgment of a trial court) for sufficiency of evidence or excessiveness. See Soti v. Lowe's Home Centers, Inc., 906 So.2d 916, 919-22 (Ala. 2005) (distinguishing the five-year period in Griner from the lesser period of time in the case at bar, and finding that the plaintiff failed to adduce evidence sufficient to defeat the defendant's dispositive motion on the claim of outrage). Soti, ante, is a benefits case like Griner and this case, and like this case, Soti involved an allegation of benefits denied over a period of time shorter than the five years in Griner.

**B.     The Cases the Defendants Cites Are Legally Inapposite**.

The Defendant's proof-by-comparison position suffers another defect. It does

---

[2] In the underlying state-court proceeding, the employer that is the insured of the Defendant contends that the Plaintiff did not receive medical care for only a period of seven months, a lapse the employer attributes solely to the insurer's (the Defendant's) good-faith effort to locate a physician for the Plaintiff. Defendant's Response to Plaintiff's Petition for Citation of Contempt (Dec. 21, 2006) at ¶ 13 (attached here as **Exhibit E**).

not recognize an overarching legal principle of today which did <u>not</u> obtain when most of the cases it cites were decided.  That principle is this: as a matter of Alabama law, awards of punitive damages are unlikely to be large in relation to the compensable injuries a plaintiff alleges.  <u>See</u> <u>e.g.</u>, <u>Life Ins. Co. of Georgia v. Smith</u>, 719 So.2d 797, 806 (Ala. Jul 17, 1998) ("In this era following <u>BMW of North America, Inc. v. Gore</u>, <u>supra</u>, we recognize that closer scrutiny of the relationship between compensatory damages and punitive damages is necessary.").  The Defendant's cases are legally inapposite and outdated for that reason.

The inapposite and outdated cases include (1) <u>Liberty Nat'l Life Ins. Co. v. McAllister</u>, 675 So.2d 1292 (Ala. 1995), in which a punitive damages award <u>one thousand times</u> greater than the plaintiff's compensable injury was affirmed, and (2) <u>Foster v . Life Ins. Co. of Georgia</u>, 656 So.2d 333 (Ala. 1994), in which an award of punitive damages twenty times the amount of compensatory damages was reinstated.  <u>Id.</u> at 337 (reducing compensatory damages by four-fifths on ground of excessiveness and reinstating punitive damages twenty times that amount of compensatory damages).

**C.    Because the Defendant's Cases Differ From This Case By Degrees, <u>They Fail the Test of Proof of Jurisdictional Amount.</u>**

The Defendant has not carried its burden given the above shortcomings in its

proof-by-comparison position.   A recent decision of another federal court in Alabama demonstrates that conclusion.  "Defendants' hopeful conjecture based on Alabama jury verdicts in cases that may have some similarity to, but are not closely similar, this case do not suffice to remove the obligation of the removing defendants to prove that the jurisdictional amount exists . . . "  <u>Lowery</u>, memo. op. at 24 (**Exhibit A**).

     <u>Lowery</u> is consistent with holdings of this Court on precisely the same issue. Indeed, holdings of this Court require an even greater similarity of facts (even identity of facts) in any case a removing defendant cites as a comparator to prove the jurisdictional amount.   That burden and this Defendant's manifest failure to carry it is shown by this decision:

> Finally, "[a]lthough [defendant] also cites 'representative cases' from Alabama courts that it contends prove the value of this case, the factual backgrounds in those cases <u>are not identical</u> to the present case, so the court cannot draw any definitive conclusions from them. Some juries may have awarded damages beyond the jurisdictional limit for similar causes of action, but that does not prove that a jury would award more than $75,000 on the particular facts of this case."

<u>Anchor Managing General Agency, Inc. v. Lloyd's of London</u>, 2006 WL 2239153 at *1  (M.D. Ala. Aug. 4, 2006) (quoting <u>Alexander v. Captain D's LLC</u>, ___ F.Supp.2d ___, ___, 2006 WL 1765902 at *2 (M.D. Ala. 2006)) (emphasis added).

     Whatever similarities exist between this case and the cases the Defendant

cites, the Defendant is not clairvoyant and cannot confidently forecast either a jury award in excess of $75,000 or an equal sum that would pass muster on appellate review. The removal fails the test of <u>Anchor Managing General Agency</u>, <u>ante</u>. It fails the test of <u>Lowery</u>, <u>ante</u>.

3.    **THERE IS NO FEDERAL DIVERSITY JURISDICTION WHEN A DOUBT REMAINS WHETHER A JURISDICTIONAL REQUIREMENT HAS BEEN SATISFIED.**

"[A]ll doubts about jurisdiction should be resolved in favor of remand to state court." <u>Univ. of South Alabama. v. Am. Tobacco Co.</u>, 168 F.3d 405, 411 (11th Cir.1999). Accordingly, because the Defendant has not resolved every doubt whether the jurisdictional requirements are satisfied, there is no federal diversity jurisdiction, and the case must be remanded. The Eleventh Circuit's latest survey of controlling precedent shines additional light that makes that conclusion crystal clear:

> . . . The rule of construing removal statutes strictly and resolving doubts in favor of remand, however, is well-established. <u>See</u>, <u>e.g.</u>, <u>Shamrock Oil & Gas Corp. v. Sheets</u>, 313 U.S. 100, 108, 61 S.Ct. 868, 872, 85 L.Ed. 1214 (1941) ("[T]he policy of the successive acts of Congress regulating the jurisdiction of federal courts is one calling for the strict construction of [removal statutes]."); <u>Syngenta Crop. Prot., Inc. v. Henson</u>, 537 U.S. 28, 32, 123 S.Ct. 366, 369, 154 L.Ed.2d 368 (2002) ("[S]tatutory procedures for removal are to be strictly construed."); <u>Burns v. Windsor Ins. Co.</u>, 31 F.3d 1092, 1095 (11th Cir.1994) ("[R]emoval statutes are construed narrowly; where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand."); <u>Univ. of S. Ala. v. Am. Tobacco Co.</u>, 168 F.3d 405, 411 (11th Cir.1999) ("[A]ll

doubts about jurisdiction should be resolved in favor of remand to state court.").

<u>Miedema v. Maytag</u>, 450 F.3d 1322, 1328-29 (11th Cir. 2006).

**4.    THIS LAWSUIT IS INTERTWINED WITH A TWENTY-YEAR OLD JUDGMENT OF AN ALABAMA STATE COURT, A FURTHER REASON FOR A REMAND BASED ON THE DEFENDANT'S FAILURE TO PROVE <u>THE JURISDICTIONAL REQUIREMENTS</u>.**

The rule resolving every doubt about federal jurisdiction in favor of remand is due to be vindicated here for reasons which distinguish this case. The lawsuit is intertwined with and arises upon a twenty-year old judgment of the Alabama state court from which the suit has been removed. The Alabama state court retains jurisdiction to enforce that judgment, as shown by the recent order in that case setting a hearing on January 23, 2007. That order is attached here as **Exhibit F**, along with the Plaintiff's petition to find the defendant in contempt, which is the matter the state court will hear on January 23rd.

The Defendant has removed in order to avoid in part the consequences of the state court's continuing jurisdiction over this twenty-year old case. It may believe it gains an advantage by obtaining "two bites" on the factual allegations underpinning both this lawsuit and the state-court action in which the hearing will be held later this month. That stratagem is evident in the fact that the Defendant has apportioned the defense of this suit and the defense of the underlying state-court

9

proceeding between itself and the former employer for whom the Defendant is the insurer. In both actions, the Defendant, named as CNA Foundation, was the <u>only</u> party served with the Plaintiff's pleadings. Yet, it answered only in this suit, leaving a responsive pleading in the state-court case to the former employer (Coastal Industries, Inc.). **Exhibit E** is that responsive pleading.

The Defendant also may be hoping to dissuade the Plaintiff from fully pursuing her rights. The added expense of conducting a parallel and duplicative proceeding in this Court operates in favor of the deep pocket, i.e., the Defendant. Whatever the purpose of the removal, a remand would promote comity and uphold the prudential purposes of the settled rules against removal of suits in which federal jurisdiction has not been proven. It would be practical and economical.

### Request for Expedited Hearing

As shown, a hearing in the state-court action which gives rise to this proceeding will he held on January 23, 2007. For that reason, the Plaintiff respectfully requests that a hearing on her motion to remand be held before January 23, 2007. An expedited hearing would economize the litigation and vindicate the rule resolving every doubt about federal jurisdiction against a removing defendant.

## CONCLUSION

The Plaintiff will do her utmost to gain the best and fairest recovery in her suit, whether the suit is heard here or in the state court from which it was removed. Her earnestness is not the issue, however.  The issue is whether this removing Defendant has carried its burden to prove the requirements of federal diversity jurisdiction.  It has not.  A remand is due accordingly.

Respectfully submitted this 8th day of January, 2007, by:

> s/Stephen D. Heninger
> Stephen D. Heninger
> Heninger Garrison Davis, LLC
> P. O. Box 11310
> Birmingham, Alabama 35202
> Telephone:    205.326.3336
> Facsimile:    205.326.3332
> E-mail:        Steve@hgdlawfirm.com
> [ASB5227E68S]

## CERTIFICATE OF SERVICE

I hereby certify that on January 8, 2007, I electronically filed the foregoing document with the Clerk of Court using the EM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

M. Christina King
Brandy R. Owens
LIGHTFOOT, FRANKLIN & WHITE, L.L.C.
The Clark Building

11

400 North 20th Street
Birmingham, Alabama 35203
205.581.0700
205.581.0799

s/Stephen D. Heninger
Stephen D. Heninger

# Exhibit  A

FILED
2006 Oct-24 PM 04:55
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

KATIE LOWERY, et al.,           }
                                }
        Plaintiffs,             }
                                }      CIVIL ACTION NO.
v.                              }      06-AR-1370-S
                                }
HONEYWELL INTERNATIONAL,        }
INC., et al.,                   }
                                }
        Defendants.             }

### MEMORANDUM OPINION

Before the court is the motion of Katie Lowery and her 418 fellow plaintiffs ("plaintiffs") to remand their above-entitled conjoined action to the Circuit Court of Jefferson County, Alabama, from which it was removed by one defendant, Alabama Power Company ("Alabama Power"), as a purported "mass action" under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1453 and 1332(d). Also before the court is plaintiffs' motion for reconsideration of the court's order of August 16, 2006, requiring them to state their opinions of the fair values of their respective 419 individual claims and whether or not an aggregation of their claims can reasonably be expected to reach the $5,000,000 in controversy necessary for a CAFA removal. For the reasons that follow, the court will grant both the motion for reconsideration and the motion to remand.

### I.    Introduction and Procedural History

Plaintiffs own and occupy numerous parcels of real property

situated in Jefferson County, Alabama.  On January 24, 2003, Ms.
Lowery and eight other individuals filed a complaint against
eleven named alleged polluters and multitudinous fictitious
defendants in the Circuit Court of Jefferson County, Alabama,
Bessemer Division, seeking damages under Alabama law for trespass
to person and realty; negligent, wanton or intentional injury;
nuisance; and outrageous conduct.  If any tort was committed by
any defendant, it arose out of the discharge of pollutants into
the air of Jefferson County.  There is nothing in the original
complaint to distinguish between a plaintiff who may be claiming
severe lung disease from one who may be claiming grit in her
grits.  The original complaint included the following demand:

> [E]ach Plaintiff demands judgment against said
> Defendants in the sum of One Million Two Hundred Fifty
> Thousand Dollars and costs.

On October 31, 2005, after the case had been transferred
from the Bessemer Division to the Birmingham Division,
plaintiffs filed an amended and recast complaint, in which
533 individuals were named as plaintiffs and an additional
defendant was named, and the preposterous demand for
$1,250,000 for each plaintiff was eliminated and replaced
with the following enigma:

> [T]he plaintiffs demand judgment against said
> defendants in an amount of compensatory and
> punitive damages to be determined by a jury in
> excess of the jurisdictional minimum of this
> [state] Court, together with interest from the
> date of injury, and the costs of this proceeding.

2

There was no request, express or implied, for status as a
class action in the original or any subsequent amended
complaint.  The only excuse offered for conglomerating the
separate, individual complaints into one suit was that the
claims shared common questions of fact and law.  On March
16, 2006, plaintiffs filed a second amended and recast
complaint, which named 417 plaintiffs and in which the
indeterminate demand for judgment and damages was not
changed.

On June 20, 2006, plaintiffs filed a third amended and
recast complaint, naming 419 plaintiffs and adding as
defendants, Alabama Power and Filler Products Company, Inc.
("Filler Products").  No new theories of liability or new
acts of tortious conduct were added, and plaintiffs' demand
for an unspecified amount in damages was identical to that
contained in their first and second amended and recast
complaints.  On July 17, 2006, Alabama Power removed the
case to this court.  In its supplemental notice of removal
it invoked 28 U.S.C. § 1446 and the removal provisions of
CAFA, 28 U.S.C. §§ 1453 and 1332(d), asserting that the
action constitutes a "mass action", which, under 28 U.S.C. §
1332(d)(11)(B)(i), is removable.  Paragraph 3 of the
supplement to the notice of removal began with this
sentence: "Plaintiffs did not specify their damages in the

3

complaint". On August 3, 2006, plaintiffs filed the motion
to remand now under consideration. Although plaintiffs
initially withdrew their motion to remand, they thereafter
asked that it be reinstated, and the court reinstated it.[1]

On August 11, 2006, defendants, Filler Products, Hanna
Steel Corporation, United States Steel Corporation, Butler
Manufacturing Company, Honeywell International, Inc., Fritz
Enterprises, Inc., CertainTeed Corporation, Vulcan Materials
Company, Baily-PVS Oxides, LLC, and W.J. Bullock Inc.,
purported to join Alabama Power's notice of removal,
although they deny that they were required to do so. They
take the position that the entire case was effectively
removed by the filing of Alabama Power's notice of removal.

## II. Was the Case Successfully Removed by All or Any of the Defendants?

### A.    The Significance of the Date of Commencement

CAFA expressly provides that "[t]he amendment made by
this Act shall apply to any civil action **commenced** on or
after the date of enactment of this act." (emphasis added).
The date of CAFA's enactment was February 18, 2005.
According to CAFA, then, to the extent this action was
"commenced" before February 18, 2005, CAFA provided no

---

[1]Alabama Power objects to the court's having allowed plaintiffs to
refile their motion to remand. Even if the permission given was not a matter
within the court's discretion, the court's subject matter jurisdiction would
necessarily be addressed *sua sponte*.

4

removal opportunity.

Although plaintiffs filed their original complaint
before CAFA's enactment, the amendment that added Alabama
Power and Filler Products, and that precipitated this
removal, came after CAFA's effective date.  This procedural
fact creates two potentially dispositive removability
questions: (1) did the filing of the third amended complaint
"commence" a new suit for purposes of CAFA; and (2) if so,
did the new suit, by retroactive effect, "commence" as to
**all** defendants, or only as to Alabama Power and Filler
Products.  Filler Products did not join the removal until
more than thirty days after service of the third amended
complaint, as required by 28 U.S.C. § 1446(b), and for aught
appearing, it never filed a copy of a removal notice with
the clerk of the state court as required by 28 U.S.C. §
1446(d).  Therefore, the purported joinder by Filler
Products in the removal by Alabama Power presents a
timeliness issue not shared by Alabama Power or any of the
original defendants.

After the court heard oral argument on plaintiffs'
motion to remand, the Eleventh Circuit followed the Fifth
Circuit's decision in *Braud v. Transport Service Co. of
Illinois*, 445 F.3d 801, 803 (5th Cir. 2006), and held that
state law determines when an action is "commenced" for the

5

purposes of CAFA.  *Tmesys, Inc. v. Eufaula Drugs, Inc.*, 462
F.3d 1317, 1319 (11th Cir. 2006).  In *Braud*, the Fifth
Circuit had earlier explained that the date upon which an
action is "commenced" in a state court is ascertained from
that state's rules of procedure.  445 F.3d at 803.
Accordingly, this court must look to the Alabama Rules of
Civil Procedure to find out when this action was
"commenced."  Alabama's rules provide that "[a] civil action
is commenced by filing a complaint with the court."  Ala. R.
Civ. P. 3(a).  The fact, then, is that unless there is a way
for defendants to escape the clutches of this procedural
rule, this action was "commenced" on January 24, 2003, when
the original complaint was filed.

As the *Braud* court recognized, a distinct issue appears
when a complaint is amended to add a defendant.  Following
the Seventh Circuit's *dicta* from *Schillinger v. Union Pac.
R.R.*, 425 F.3d 330 (7th Cir. 2005), the Fifth Circuit in
*Braud* held that "**as to the new defendant**, removability is
determined as of the date of receipt of service of the
amended complaint, not as of the date on which the original
suit was filed in state court."  445 F.3d at 805.  (emphasis
added).  This language is pregnant with meaning.  It means
that **as to Alabama Power and Filler Products** for the
purposes of CAFA this action was not "commenced" until June

6

20, 2006, while as to the original defendants, it was

"commenced" on January 24, 2003.  There is no basis for

artificially applying the concept of "retroactivity" so as

to make June 20, 2006, the "commencement" date as to

original defendants against whom no new claims were made in

the amended complaint filed on June 20, 2006.  Accordingly,

only Alabama Power and Filler Products could, by filing

notices of removal within thirty days after June 20, 2006,

and notifying the state court clerk of the removal, avail

themselves of the removal provisions of CAFA.  This leaves

for discussion only the question of whether the procedural

and substantive requisites for a CAFA removal were met by

Alabama Power and Filler Products.

        All defendants strenuously argue that a CAFA removal by

a single defendant added after CAFA's enactment operates to

effect the removal of the entire action, including all of

the parties and all of the claims, and not just the claims

asserted against the defendant or defendants added after

CAFA's effective date.  Defendants rely on (1) the statutory

language of CAFA, (2) Congressional intent, and (3) the

Fifth Circuit's decision in *Braud*.  The recent case of *Moniz*

*v. Bayer A.G.*, ___ F. Supp. 2d ___, 2006 WL 2356008 (D.

Mass., Aug. 14, 2006), was not urged upon the court, that

case having only come up on the Westlaw screen after this

removal, but for the reasons that follow, the court remains
unpersuaded, either by defendants' arguments, or by *Moniz*
and the authorities it cites.

Defendants first contend that the statutory language
supports their belief that a single, post-CAFA defendant can
remove the **entire** action.  In particular, defendants note
that, with regard to a "class action", CAFA provides that
"such **action** may be removed by any defendant without the
consent of all defendants".  28 U.S.C. § 1453(b) (emphasis
added).  Defendants' position in this regard is not entirely
devoid of merit.  Under 28 U.S.C. § 1332(d)(11)(A), "a **mass
action** shall be **deemed** to be a **class action** removable under
paragraphs (2) through (10) if it otherwise meets the
provisions of those paragraphs".  (emphasis added).
Accordingly, if defendants are correct when they say that
this action constitutes a "mass action" under 28 U.S.C. §
1332(d)(11)(B)(i), Alabama Power's notice of removal
arguably functions as a removal of the entire "**action**",
including **all** plaintiffs' claims against all defendants,
sweeping into this court the claims against the pre-CAFA
defendants who theoretically might not have wanted their
case in a federal court, and the one post-CAFA defendant
who, in this case, did not timely join in the removal.

Whether or not this action is, in fact and law, a "mass

8

action" according to CAFA's definition of that term is not
clear.  *See Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d
676, 682 (9th Cir. 2006) (discussing the confusion around
the definition of "mass action", and noting that meshing
existing jurisdictional and removal statutes with CAFA "mass
action" provisions is "far from straightforward").
Regardless of how this Gordian knot will ultimately be
untied, the court rejects defendants' argument, because
adopting it would render § 1332 internally inconsistent.  In
particular, § 1332(d)(11)(B)(i) provides that "[a]s used in
subsection (A), the term 'mass action' means any civil
action . . . in which monetary relief claims of 100 or more
persons are proposed to be tried jointly on the ground that
the plaintiffs' claims involve common questions of law or
fact, **except that jurisdiction shall exist only over those
plaintiffs whose claims in a mass action satisfy the
jurisdictional amount requirements** under subsection (a)."
(emphasis added).[2]  If defendants' position were adopted,
this enormous loose conglomeration of 419 individual damage

---

[2]The difficulty in meshing "mass action" with "class action" is
illustrated by the fact that a "class action" is not removable under CAFA
unless "the matter in controversy exceeds the sum or value of $5,000,000."  A
"mass action" is "deemed" to be a "class action," if it has 100 plaintiffs,
but, hypothetically, if 99 of the plaintiffs have claims of nominal value,
their individual claims cannot be removed.  Does this mean that one claim out
of 100 is removable if it is worth enough to bring the aggregation of claims
to the magic figure of $5,000,000, or is it necessary that at least 100
plaintiffs each have a claim worth $75,000 and an aggregate value of
$5,000,000?

9

suits suddenly became removable on June 20, 2006, under §
1333(d)(11)(A), even though this court clearly lacked
subject-matter jurisdiction over the claims of the
individual plaintiffs whose claims are worth less than
$75,000. If there is internal inconsistency in CAFA, that
inconsistency must be resolved by giving predominance to the
language that limits jurisdiction, and not to language that
would expand it. Although defendants' argument has
colorable merit, the court respectfully rejects the idea
that CAFA's language mandates complete removability of this
case. To the contrary, the court concludes that an "action"
removable under § 1453(b), when used in connection with a
"mass action" as defined by § 1332(d)(11), refers only to
the removal of the claims of those plaintiffs over whom the
federal court has subject-matter jurisdiction, namely, those
that exceed $75,000 in value and that were commenced after
February 18, 2005.

    Not taking "no" for an answer, defendants next argue
that in CAFA Congress intended to expand federal
jurisdiction, and that the removal provisions as a matter of
this new public policy are to be liberally construed in
favor of removal. Defendants rely on the following language
from a Senate Judiciary Committee Report: "[b]y this
provision, it is the Committee's intent to overrule case law

developed by the federal courts requiring the consent of all parties, to the extent that such precedents might be applied to class actions subject to the expanded jurisdictional removal provisions . . . ." Judiciary Committee Report on Class Action Fairness Act, S.REP. No. 109-14 (1ˢᵗ Sess. 2005). This argument falls short for several reasons. First, the provision to which the Committee language refers is subsection 1453(b), and not subsection 1332(d), the subsection that defines "mass action," as distinct from "class action," the latter of which this case admittedly is not. While a consideration of legislative history is appropriate in instances where there is ambiguity in the statutory language, and while the word "action", as used in subsection 1453(b), is arguably ambiguous, the portion of the Committee Report that defendants rely upon does not resolve that possible ambiguity.[3]  More importantly, the Committee language does not support the position defendants put forward. The sentence immediately preceding the one cited by defendants states that "[t]his revision to the removal rules will prevent a plaintiffs' attorney from recruiting a 'friendly' defendant . . . who could refuse to join in a removal to federal court and thereby thwart the

---

[3] Speaking of ambiguity, there is other language in CAFA that is ambiguous enough to tempt post-hoc comment by Congresspersons and Senators with agendas.

11

legislative efforts of the primary corporate defendant to
seek a federal forum in which to litigate the pending
claims". S.REP. No. 109-14. This portion of the Committee
Report is inapposite, because no party to the instant case
claims that a failure to remove by any defendants other than
Alabama Power precluded Alabama Power's removal. And even
if the Committee Report excerpt were relevant, it was issued
ten days **after** CAFA was enacted, and by a small subset of
the voting body of the Senate. Such after-the-fact
bolstering or "shaping" is a technique of statutory
construction this court rejects. This court shares the
Ninth Circuit's recognition that this belated Committee
Report has limited persuasive value. *See Abrego*, 443 F.3d
at 683. Furthermore, the same Senate Report was relied upon
by defendants in *Moniz*, in which defendants, defending their
CAFA removal, quoted the following language from the Report,
at page 43: "it is the intent of the Committee that the
named plaintiff(s) should bear the burden of demonstrating
that a case should be remanded to state court". The
district court speaking in *Moniz* made short shrift of this
argument, quoting the Southern District of Texas as follows:

> The rule that the proponent of federal
> jurisdiction bears the risk of non-persuasion has
> been around for a long time. To change such a
> rule, Congress must enact a statute [to that
> effect]. A declaration by 13 Senators will not
> serve.

12

*Werner v. KPMG LLP*, 445 F. Supp. 2d 688, 693 (S.D. Tex. 2006).

As their last gasp, defendants argue that the entire action is removable because *Braud*, properly construed, requires it. Despite the Fifth Circuit's clearly explaining that the action became removable only "**as to the new defendant**", defendants point out that the Fifth Circuit did actually find the entire action there to have been properly removed. Although defendants do not misstate *Braud* in this regard, they err in asserting that "the salient facts before the Court in *Braud* were not unlike those now presented in this case." The most salient, the most distinctive, and the most material fact in this case is that it is a purported "mass action" under 28 U.S.C. § 1332(d)(11)(B)(i), and not a "class action" under 28 U.S.C. § 1332(d)(1)(B), as in *Braud*. In accordance with a limiting *proviso* within the section of the statute defining "mass action," subject-matter jurisdiction exists "only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount requirements under subsection (a)." 28 U.S.C. § 1332(d)(11)(B)(i). There is no such jurisdictional limitation for individual plaintiffs in **class** actions. Thus, this case presents an issue that the *Braud* court did not consider, and had no reason to consider, namely, the

13

effect of § 1332(d)(11)(B)(i) on whether a "mass action" can
be removed in its entirely by a post-CAFA defendant, just as
if the action had been a "class action" under §
1332(d)(1)(B). To apply *Braud* to a purported "mass action"
would result in a multi-plaintiff action being entirely
removable, overriding a clear lack of jurisdiction over the
claims of particular plaintiffs having claims of less than
$75,000 in value.[4] Lastly, defendants forget that decisions
by the Fifth Circuit are not binding on the Eleventh Circuit
unless pre-1981.

Despite CAFA, federal courts are still courts of
limited jurisdiction. While CAFA admittedly broadens
federal removal jurisdiction, it does not unanchor the
federal courts from the basic principle of federalism that
requires the construction of removal statutes against a
removing defendant.

*Moniz* presented to the district court in Massachusetts
a question of the CAFA removability of a case involving the
question of the possible "relation back" of an amendment

---

[4]Moreover, under 28 U.S.C. § 1447(c), "[i]f at any time before final
judgment it appears that the district court lacks subject-matter jurisdiction,
the case shall be remanded. An order remanding the case may require payment
of just costs and any actual expenses, including attorney fees, incurred as a
result of removal". Adopting defendants' position would lead to the further
anomalous result that a non-removing defendant in a mass action – who
nevertheless has its claims removed by another defendant under CAFA – might be
required to pay attorneys fees and costs associated with an improper removal
even though that defendant did not submit to or join the notice of removal.

14

that made a substantive change in a theory, or that added

new claims for relief after the enactment of CAFA.    First,

*Moniz* was a "class action" and not a "mass action".    No new

defendant was added as in the instant case.    The idea of

"relation back" in a case in which a new defendant is added

was not addressed in *Moniz* except as *dicta*, and is clearly

not presented in the instant case.    The claims against these

original defendants were the same on June 20, 2006, when

Alabama Power and Filler Products were added, as they were

on January 24, 2003, when the complaint was first filed.

### B.    Do Alabama Power and Filler Products Meet the CAFA Removal Requirements?

The court having concluded that the CAFA removal

provisions apply only to Alabama Power and Filler Products,

and that the action against the original defendants cannot

tag along, the court next examines whether the removal by

the two post-CAFA parties was effective.    The court knows of

no reason why Filler Products is excused from compliance

with 28 U.S.C. § 1446(b) and (d) which required it to

remove, as Alabama Power did, within thirty days after it

first received a paper alerting it to the fact of

removability.    However, this failure by Filler Products

becomes academic in light of the conclusion this court

reaches that the substantive removal requisites for post-

CAFA removal were not met either by Alabama Power or by

15

Filler Products.

To repeat for the third time, in CAFA "jurisdiction shall exist only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount requirements under subsection (a)." 28 U.S.C. § 1332(d)(11)(B)(i). As in diversity removals generally, the amount in controversy must "exceed the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). The original nine plaintiffs specified in their original complaint that each demanded $1,250,000 plus costs. However, nowhere in any subsequent amendment does any plaintiff claim or otherwise designate a specific amount of damages, and Alabama Power was not added as a defendant until the third amended and recast complaint was filed. Alabama Power apparently argues that, because CAFA became effective before plaintiffs filed their first amended and recast complaint – *i.e.*, when the complaint contained an express demand of more than $75,000 in damages for each plaintiff – the jurisdictional amount requirement of 28 U.S.C. § 1332(d)(11)(B)(i) has been met. Alabama Power's argument is unconvincing because the action had not "commenced" as to it when the original complaint was still in effect. The action did not so "commence" as to Alabama Power until the third amended and recast complaint was filed, and by that time

16

plaintiffs had eliminated any specification of damages being sought. It is of no consequence that CAFA became effective when the astronomical amount in controversy was still specified in the complaint, because such amount was **not** specified when the action became even arguably removable under CAFA. During the time the original complaint was still operative, not only had the action not yet "commenced" as to Alabama Power, but neither had the 28 U.S.C. § 1332(d)(11)(B)(i) requirement that a "mass action" must involve the monetary relief claims of at least 100 persons been met.

By the time this action could possibly have become a "mass action" removable under CAFA, the complaint in effect was silent as to the amount in controversy. And when a state court complaint is uncertain or silent on the amount being sought, the removing defendant under 28 U.S.C. § 1332 has the burden of proving the jurisdictional amount by a preponderance of the evidence. *Leonard v. Enterprise Rent-A-Car*, 279 F3d 967, 972 (11th Cir. 2002). Nothing in CAFA changes this rule. A conclusory allegation in the notice of removal cannot supply the proof necessary to meet this burden. In spite of the rather unrealistically ambitious amount-in-controversy figure specified in the original complaint, the values of the claims contained in the third

17

amended and recast complaint are highly speculative.  This
court, based on its experience and on the voluminous state
court file, frankly doubts, despite plaintiffs' counsel's
bravado on behalf of some of his unnamed clients, that any
plaintiff's claim exceeds $75,000 in value, much less that
all claims aggregate in excess of $5,000,000 in value, as
required for a CAFA removal.  It is easy to hope that 419
combined claims have an aggregate value over $5,000,000.  It
is something else for a removing defendant to prove it.

> **1.    Under CAFA, Do the Plaintiffs Bear the Burden
> of Establishing the Nonexistence of the
> Amount in Controversy?**

Does the fact that none of these named 419 plaintiffs
disclaim and disavow all intention or hope of recovering
more than $75,000, and that they are willing to engage in
wishful thinking that their total claims are worth
$5,000,000, constitute proof of the existence of the CAFA
jurisdictional amount?  Defendants say that it does.
Plaintiffs say that it does not.  It comes down to which
side has the burden of proof on this subject, and how, and
if, that burden can be met in a "mass action" case.  The
Eleventh Circuit has recently gotten ahead of the district
court who wrote *Moniz* by holding that **"CAFA does not change
the traditional rule that the party seeking to remove the
case to federal court bears the burden of establishing**

18

**federal jurisdiction**". *Evans v. Walter Indus.*, 449 F.3d 1159, 1164 (11th Cir. 2006). (emphasis added). In *Evans*, the Eleventh Circuit recognized an exception only when there is an **express** exception, holding that "when a party seeks to avail itself of an express statutory **exception** to federal jurisdiction granted under CAFA . . . the party seeking remand bears the burden of proof with regard to that **exception**". *Id.* (emphasis added). The instant case presents a question of first impression, namely, whether the § 1332(d)(11)(B)(i) *proviso* that "**except** that federal jurisdiction shall exist only over [the plaintiffs with $75,000 claims]" constitutes an "**exception** to federal jurisdiction granted under CAFA" as in *Evans* and thus for the first time places the burden of proving the **absence** of jurisdiction on plaintiffs. (emphasis added). Alabama Power contends that the burden of proof for establishing the absence of $75,000 in controversy, and thus obtaining a severance and remand, rests upon each plaintiff separately. This argument is based on Alabama Power's reading of the *proviso* as an **exception** to federal jurisdiction and would take *Evans* into new and uncharted territory. Alabama Power misconstrues the meaning of the phrase "exception to federal jurisdiction". As will be demonstrated, the *proviso* is not an "exception".

19

In *Evans*, the Eleventh Circuit was considering whether the defendant or the plaintiff bears the burden of proving CAFA's "local controversy exception" to jurisdiction after the base requisites of removal jurisdiction had already been met. 449 F.3d at 1161. CAFA's local controversy **exception** provides:

> A district court **shall decline to exercise jurisdiction** under paragraph (2) –
>
> (A)(I) over a class action in which–
>
>> (I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;
>>
>> (II) at least 1 defendant–
>>
>>> (aa) from whom significant relief is sought by members of the plaintiff class;
>>>
>>> (bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and
>>>
>>> (cc) who is a citizen of the State in which the action was originally filed; and
>>
>> (III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and
>
> (ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons;

28 U.S.C. § 1332(d). (emphasis added).

The Eleventh Circuit concluded that because this is a

provision that requires the court to decline an exercise of
jurisdiction, even though jurisdiction otherwise exists
under CAFA, plaintiffs there had the burden of establishing
the requisites for the exception.  449 F.3d at 1164.

The $75,000 limitation in 28 U.S.C. § 1332(d)(11)(B)(i)
is quite unlike the local controversy exception of 28 U.S.C.
§ 1332(d)(4).  If there is an absence of $75,000 in
controversy, there is no jurisdiction *ab initio* and thus
nothing to decline.  Federal jurisdiction simply does not
exist over claims of less than $75,000.  The "local
controversy" exception describes a situation in which
jurisdiction exists but in which the court must decline to
exercise it.  Alabama Power's myopic focus on the word
"except" does not change this distinction.  The $75,000
*proviso* is not an "exception" to federal jurisdiction, but a
criterion for determining whether federal jurisdiction
exists in the first place.  In *Evans*, the Eleventh Circuit
squarely recognized that the burden of establishing
jurisdiction in a CAFA case is on the party seeking removal,
and the $75,000 amount in controversy is a necessary element
of federal jurisdiction, upon which the removing defendant
has always had and still has the burden of proof.  449 F.3d
at 1164.

The same analysis appertains as to the $5,000,000

21

required for CAFA jurisdiction, although this aggregation
concept is contained in a subsection of CAFA separate from
the individual $75,000 limitation in "mass action" cases.

> **2.    Has Alabama Power Met Its Burden of**
> **Establishing $75,000 in Controversy for**
> **Individual Plaintiffs and/or $5,000,000 in**
> **Controversy in Total?**

While insisting that each plaintiff has the burden of
proving the absence of $75,000 in controversy in order to
obtain a remand of his claim, Alabama Power takes the fall-
back position that if it bears the burden of establishing
$75,000 in controversy, that burden only applies as to one
plaintiff, and that it has met that burden by virtue of
counsel's in-court admission, a concession that, according
to Alabama Power, reimposes upon plaintiffs the burden of
establishing which of them expect to recover less than
$75,000 and thus be entitled to a severance and remand.

Alabama Power relies upon the following colloquy that
occurred in open court:

> THE COURT: Lloyd [Lloyd Gathings, plaintiffs'
> counsel], you and  Bill [Bill Thomason,
> plaintiffs' other counsel] seriously think that
> one or more of your 400 plaintiffs is going to
> have a shot at more than $75,000?
>
> MR. GATHINGS: One or more, Judge.  All of them
> don't.

Alabama Power's argument loses steam quickly because,
even if Mr. Gathings' conclusory statement suggests that

under such circumstances the amount-in-controversy

requirement is met as to at least one plaintiff, there is no

authority for the proposition that the burden thereupon

shifts to plaintiffs to establish that the requirement is

**not** met as to all other plaintiffs.[5]  Mr. Gathings never

mentioned the name of a single plaintiff, much less linked

any plaintiff with a particular *ad damnum*.  The damages

situation remains fluid and amorphous.

Mr. Gathings' in-court statement cannot satisfy Alabama

Power's burden of establishing the jurisdictional amount as

to some plaintiff or plaintiffs.  The statement only

reflects Mr. Gathings' belief that at least one of his

clients has a claim exceeding $75,000 in value, but the

voicing of his opinion cannot establish for which plaintiff

or plaintiffs Mr. Gathings holds this belief, or on what his

belief is based.  Moreover, in response to the court's order

requiring plaintiffs to provide information concerning the

values of their individual claims, plaintiffs forthrightly

---

[5]Moreover, the severance and remand that will ultimately occur if the
current removal is allowed when it becomes apparent that some of the 419
plaintiffs have claims of less than $75,000 is something to contemplate
fearfully.  There is no question about the lack of jurisdiction over "mass
action" plaintiffs who only seek less than $75,000.  On Alabama Power's
theory, the court can envision keeping the case of one of 419 plaintiffs, and
remanding 418, after two years of discovery.  Judicial economy was not totally
ignored in CAFA.  If the court could, at this juncture, determine which
plaintiffs have claims less than $75,000 in value as against Alabama Power,
and remand only them, doing so would create a bifurcation that would be
productive only of duplicate effort and unknown problems, compounded by the
certain fact that either the state court proceeding or the proceeding in this
court would end first and impact the other.

explained that they do not know which, if any, have claims
that may reasonably be expected to exceed $75,000 in value.
Mr. Gathings did not specify, because he could not, which
plaintiffs have claims whose values exceed $75,000.  This is
not his fault.  The court can well understand his reluctance
to place a cap on individual claims when there remains a lot
of discovery to be done on the subject of the damages of
various and sundry types possibly suffered by widely
divergent plaintiffs.

Defendants' hopeful conjecture based on Alabama jury
verdicts in cases that may have some similarity to, but are
not closely similar, this case do not suffice to remove the
obligation of the removing defendants to prove that the
jurisdictional amount exists in a case in which no plaintiff
has formally claimed a particular sum, much less a sum more
than $75,000.  For the fourth and final time, 28 U.S.C. §
1332(d)(11)(B)(i) provides that "jurisdiction shall exist
only over those plaintiffs whose claims in a mass action
satisfy the jurisdictional amount requirements under
subsection (a)."  The statute does **not** say that
"jurisdiction shall exist over all plaintiffs in a mass
action if at least one of them satisfies the jurisdictional
amount requirement."  Even if Mr. Gathings' statement
purported to concede jurisdiction under the foregoing

24

hypothetical version of the statute, it does not do so under the statute as actually written. As already overemphasized, it is Alabama Power's burden to establish the jurisdiction of this court over **all** claims, and Mr. Gathings' in-court statement did not relieve Alabama Power of its burden.

In the two cases proffered by Alabama Power, plaintiffs sued over alleged pollution and recovered more than $75,000 in an Alabama court. Such anecdotal evidence, although it is quite often cited in notices of removal in diversity cases as proof of the value of a removed claim, is not enough to establish jurisdiction in a "mass action" removal. First, the cited cases are not sufficiently similar to this case to prove by a preponderance of the evidence that any particular one of these 419 plaintiffs has a legitimate expectation of recovering in excess of $75,000. Second, the cited cases do not tend to prove **which**, if any, of plaintiffs' claims exceeds $75,000 in value. Third, the cited cases cannot logically be thought to establish by a preponderance of the evidence that **all** of plaintiffs' claims meet the amount-in-controversy requirement. Mr. Gathings' statement indicates no more than his fond hope that some of his clients will recover more than $75,000. Conspicuously, Alabama Power offers no citation to a case filed by 100 or more individual plaintiffs whose combined claims are held

together only because of alleged common questions of law and
fact, and in which an Alabama court allowed a total recovery
in excess of $5,000,000.

Because Alabama Power has not met its burden of
establishing jurisdiction over a single named plaintiff,
much less over all plaintiffs, this court cannot keep any
part of this case.  It cannot logically remand only the
claims of those plaintiffs whose cases are worth less than
$75,000 when there is no basis for distinguishing one
plaintiff from another.  The court cannot merely guess, and
cannot retain jurisdiction over the whole case against
Alabama Power or any other defendant during the period in
which the parties try to ascertain which, if any, of the 419
claims is worth more than $75,000.  If the court kept the
case temporarily, it would eventually be forced by 28 U.S.C.
§ 1447(c) to remand most of the claims because it will
surely appear after further discovery that they are worth
less than $75,000.

### III. Alternative Serious Jurisdictional Deficiencies

There are alternative reasons why this case must be, or
should, in the interest of justice, be remanded.

First, "the term 'mass action' shall not include any
civil action in which . . . all of the claims in the action
arise from an event or occurrence in the State in which the

action was filed, and that allegedly resulted in injuries in that State. . . ." 28 U.S.C. § 1332(d)(11)(B)(ii)(I). Although in the case before the court the facts pertinent to an application of this statutory provision have not been fully developed, it facially appears that the language, if and when applied, will prevent the action from constituting a "mass action", and will destroy CAFA removability.

Second, according to 28 U.S.C. § 1332(d)(11)(A), in order for a "mass action" to be removable, it must meet the general requirements of a "class action" as defined in 28 U.S.C. § 1332(d)(2) through (10). The instant action falls short of these requirements. The court need not tick off the various failures to meet the "class action" definition. They require evaluation only if the court is incorrect as to other fatal jurisdictional defects already dismissed.

Third, if this action qualifies as a "mass action," the court is required to decline jurisdiction **if** greater than two-thirds of the plaintiffs are citizens of Alabama, **if** at least one defendant from whom significant relief is sought is a citizen of Alabama, and **if** the principal injuries relate to conduct that occurred in the state in Alabama. 28 U.S.C. § 1332(d)(4)(A)(i)(I,II,III). If these statutory provisions are met, a remand becomes mandatory. The fact that under *Evans* the burden of proof on these issues is on

27

plaintiffs, and that in this case plaintiffs have not attempted to affirmatively meet their burden, does not mean that these local controversy facts do not facially appear, or that plaintiffs cannot satisfy their burden after filing a renewed motion to remand. The court cannot find a limitation in CAFA or in *Evans* on the time within which a plaintiff can raise a subject-matter jurisdictional issue such as this one.

## IV.   Plaintiffs' Motion for Reconsideration of the Court's Order of August 16, 2006

Plaintiffs have requested reconsideration of the August 16, 2006 order requiring them to provide the names and addresses of all plaintiffs whose claims can reasonably be expected to exceed $75,000 in value, together with a one-paragraph explanation as to why particular claims are worth more than $75,000. As previously discussed in another context, plaintiffs explain that they do not have this information, and ask the court either to set aside the order or to accept their enigmatic answer as a sufficient explanation for their failure to provide the requested information. Believing that plaintiffs cannot be expected to know the values of their claims at this juncture, the court will grant their motion.

## V.   Conclusion

Because this purported "mass action" was commenced

against the original defendants before the enactment of
CAFA, those defendants cannot avail themselves of CAFA, and
the court accordingly must remand this action as to them.
Because the two defendants who were added after CAFA's
enactment have failed to establish that this court has
subject-matter jurisdiction over the claims of any
particular plaintiff, much less over all plaintiffs, the
court will also remand the action as to the two defendants
added after the enactment of CAFA.

A separate order of remand will be entered.

DONE this 12th day of October, 2006.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE

29

# Exhibit  B

IN THE CIRCUIT COURT FOR
MONTGOMERY COUNTY, ALABAMA

'87  FEB 16  AM 1:44

GRACE LEE MOORE,          )
                          :
          Plaintiff,  )        CIVIL ACTION
                          )
     v.                   )    NO. CV 87- _1985-PR_
                          :
COASTAL INDUSTRIES,  )
INC.,                     :
                          )
          Defendant.  :

## J U D G M E N T

Upon reading and filing the joint stipulation of the parties, upon being fully advised in the premises and upon making inquiry into the bona fides of plaintiff's claim and the liability of the defendant, and it appearing to the Court that said settlement is for the best interest of said plaintiff, it is, therefore

CONSIDERED, ORDERED, ADJUDGED, and DECREED as follows:

1.  That the settlement as set forth in said joint stipulation is hereby approved.

2.  That the plaintiff have and recover of the defendant the sum of Thirteen Thousand ($13,000.00) Dollars, for compensation benefits due, for which execution may issue.  Doctors, hospital, medical, and rehabilitation benefits shall remain available under the Workmen's Compensation Laws of Alabama.

3.  That the defendant pay all costs herein accrued, for which execution may issue.

4.  That upon the motion of Wilson Myers, Attorney for Plaintiff, a lien is hereby declared upon said recovery for his statutory fee of fifteen (15%) per cent of said recovery.

DONE, this _16_ day of December, 1987.

_____
CIRCUIT JUDGE

# Exhibit C



PO Box 105301
Atlanta, GA  30348-5301

September 15, 2005

**Consuella Holmes**
*Claim Specialist*
*Commercial Claims*
Telephone *678-473-3465*
          *800-282-7084, Ext. 3465*
Facsimile  *678-473-3533*
Internet    *Consuella.Holmes@cna.com*

Mrs. Grace Moore
2699 South HIGH ST
SELMA, Alabama 36701 6701

Claim Number:    23292084    F3        Location Code:  008888
State WC No:
Policyholder:     COASTAL IND INC
Underwriting Co:  CONTINENTAL CASUALTY CO
Injured Worker:   GRACE MOORE
Date of Loss:     06/07/1986

Dear Mrs. Moore,

We have located another physician to take over the management of your care for your workers' compensation claim.

Please call his office to schedule your appointment:

Dr. Edward Palmer
1758 Park Place #300, Montgomery, AL 36106  # 334-274-1204
                    or
4294 Lomac St., Montgomery, AL 36101

You will need your medical records from Dr. Latel. Please contact Dr. Latel's office ot make arrangements to have your records transferred to Dr. Palmer.

Please use our claim number when corresponding with our office.

Sincerely,

Consuella M. Holmes

Consuella Holmes

HD_GEN

# Exhibit  D



# CORPORATE DETAILS

## Office of the Secretary of State
## State of Alabama

---

**INITIATE NEW BROWSE**

Corporation                                                    D/C 020964
  Legal Name:   Coastal Industries Inc.

  Place Of Inc:  Dallas County

  Date Of Inc.:  01-17-1962

  Reg Agent...:  * Not On Data Base

  Prin Address:  SELMA, AL

  Capital Amt.:  $120,000 Authorized  $15,000 Paid In

  Nat Of Bus..:  MFG DEAL IN CLOTHING

  Names Of Inc:  WALLACE, DAVID H
                 UTSEY, JAMES C
                 UTSEY, J L

**1996** **ANNUAL REPORTS**

 **← PREVIOUS PAGE**

© 2007, Office of the Secretary of State, State of Alabama



# ANNUAL REPORT DETAILS

## Office of the Secretary of State
## State of Alabama

INITIATE NEW BROWSE

## 1996 Annual Report

```
Reporting
  Address...:   COASTAL INDUSTRIES INC
                ATTN CROWN INDUSTRIES
                112 GREEN ST
                SELMA, AL  367033806

Agent As
  Reported..:   UTSEY, SIDNA KAE
                112 GREEN ST
                SELMA, AL  367033806

President
  Of Corp...:   UTSEY, SIDNA KAE
                APT 1006 2021 10TH AVE S
                BIRMINGHAM, AL  35205

Secretary
  Of Corp...:   UTSEY, JAMES B
                267 W CASTLEWOOD DR
                SELMA, AL  367018311

General
  Business..:   SEWING INDUSTRY
                112 GREEN ST
                SELMA, AL  36701

Telephone
  Number....:   334-875-6028

Processed
  By Revenue:   01-27-1999
```

PREVIOUS PAGE



© 2007, Office of the Secretary of State, State of Alabama

# Exhibit  E

IN THE CIRCUIT COURT OF MONTGOMERY COUNTY, ALABAMA

GRACE L. MOORE,                          )
                                         )
        Plaintiff,                       )
                                         )
v.                                       )        Civil Action No.:    CV-1987-1985
                                         )
COASTAL INDUSTRIES, INC.,                )
                                         )
        Defendant.                       )

## DEFENDANT'S RESPONSE TO PLAINTIFF'S PETITION FOR CITATION OF CONTEMPT AND ORDER COMPELLING REIMBURSEMENT OF MEDICAL EXPENSES AND ATTORNEY FEES

COMES NOW the defendant, Coastal Industries, Inc., and responds to the plaintiff's Petition for Citation of Contempt and Order Compelling Reimbursement of Medical Expenses and Attorney Fees as follows:

1.      This is a workers' compensation case which involves an injury to the plaintiff's left thumb. Per Alabama law, the plaintiff is due future medical benefits for life and there has been no denial of same.

2.      In 2005, the plaintiff's authorized treating physician was Dr. Robert Curry in Selma, Alabama. After not receiving, nor requesting, any medical treatment for her work injury for approximately a year and a half, the plaintiff was seen by Dr. Curry on March 24, 2005.

3.      The plaintiff then followed up with Dr. Curry on or about June 7, 2005, and was informed that Dr. Curry was retiring from practice effective July 24, 2005. It was Dr. Curry's recommendation that the plaintiff be referred to Dr. Latel at Southern Orthopedic Surgeons in Montgomery, Alabama. For whatever reason, Dr. Latel was unable to treat the plaintiff and she was then referred to Dr. Edward Palmer in Montgomery as well. The plaintiff was contacted on September 14, 2005, and given Dr. Palmer's contact information and was instructed to contact his office and make an appointment.

4.    On September 15, 2005, the plaintiff contacted the workers' compensation insurance carrier for the defendant and requested that Dr. Palmer's contact information be mailed to her. It was mailed to her that day.

5.    On October 5, 2005, the plaintiff contacted the workers' compensation insurance carrier and informed it that she was having problems getting her prescription medication filled, which had been prescribed by Dr. Clower, the plaintiff's personal physician who had not been authorized to treat the plaintiff for her work injury. The workers' compensation insurance carrier contacted Dr. Clower's office on the same date and left a message requesting that he contact it.

6.    Dr. Clower's office returned the telephone call on October 10, 2005, and informed the workers' compensation insurance carrier that he was not treating the plaintiff for her work injury.

7.    On October 27, 2005, at the request of Dr. Palmer, the plaintiff's medical records were sent to him for review. On November 15, 2005, Dr. Palmer's office contacted the workers' compensation insurance carrier and informed it that after a review of the plaintiff's records, he would not agree to treat her. As such, on the same date, the workers' compensation insurance carrier informed the plaintiff that she was authorized to seek treatment for her work injury with her personal physician so that her medications would not be stopped until another doctor could be located to treat same.

8.    On December 15, 2005, the workers' compensation insurance carrier contacted the plaintiff and provided her with three different choices of physicians with which to treat for her work injury; Dr. William Lindsay (Shelby Orthopedics), Dr. Tucker Mattox (Southern Orthopedic Surgeons), or Dr. Robert McAlindon (The Hughston Clinic).

9.    On January 3, 2006, the plaintiff contacted the workers' compensation insurance carrier and informed it that she had chosen Dr. Tucker Mattox from the three previous choices. On that date as well, the plaintiff was provided the contact information for Dr. Mattox and she stated she would contact him and make an appointment.

10.     On January 4, 2006, the workers' compensation insurance carrier was contacted by Dr. Mattox and the plaintiff's medical records were requested. Thereafter, an appointment was scheduled for the plaintiff for January 27, 2006.

11.     The plaintiff was seen at Southern Orthopedic Surgeons on January 27, 2006, and a copy of the medical note evidencing said appointment is attached hereto for the court's reference. As the court will note, on January 27, 2006, it was the opinion of the plaintiff's treating physician that no further orthopedic treatment would be needed. The physician went on to state that if the plaintiff needed anything further, he would recommend pain management.

12.     Over two months later, on March 29, 2006, the plaintiff contacted the workers' compensation insurance carrier and requested a referral to a pain management physician. After a diligent, but unsuccessful, search for same in the plaintiff's area, the workers' compensation insurance carrier contacted Southern Orthopedic Surgeons on April 27, 2006, and requested that it recommend a pain management physician for the plaintiff. At that time, Southern Orthopedic Surgeons recommended either Dr. David Harrick or Dr. Brad Katz at The Center for Pain of Montgomery. Thereafter, an appointment was made for the plaintiff for November 16, 2006, for the plaintiff to see Dr. Brad Katz.

13.     By the plaintiff's own admission in her motion, she has not been denied medical treatment. However, she mischaracterizes her medical treatment when she says she did not receive medical care for over a year. That simply is not true, a fact which is clearly shown by the attached medical note dated January 27, 2006. In fact, a period of only seven months passed between the time the plaintiff requested pain management and the time she was scheduled to see a physician for same. The delay was caused by the workers' compensation insurance carrier's attempt to locate a pain management physician near the plaintiff's home in order to be convenient for her, which, by statute, it is not required to do.

14.    As shown by the above, the defendant has continuously provided medical treatment for the plaintiff and does so to this day.  Any delay in medical care has not been intentional and clearly does not rise to the level of contempt nor bad faith.

WHEREFORE, PREMISES CONSIDERED, the defendant respectfully requests this Honorable Court to deny the plaintiff's Petition for Citation of Contempt and Order Compelling Reimbursement of Medical Expenses and Attorney Fees.

Respectfully submitted,

BENNETT L. PUGH (PUG004)
J. VINCENT SWINEY II (SWI011)
Attorneys for Defendant

OF COUNSEL:

CARR, ALLISON
100 Vestavia Parkway
Birmingham, Alabama 35216
205-822-2006
205-822-2057-facsimile

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing pleading upon all counsel of record by placing a copy of the same in the United States mail, postage prepaid, addressed as follows on this the _21_ day of December, 2006, as follows:

Jonna M. Denson, Esq.
HENINGER GARRISON DAVIS, LLC
2224 1st Avenue North
Birmingham, Alabama 35203

OF COUNSEL

# Exhibit  F

FILED
CIRCUIT COURT OF
MONTGOMERY COUNTY

**IN THE CIRCUIT COURT OF**
**MONTGOMERY COUNTY, ALABAMA** 2006 DEC 11 PM 3: 50

Grace Moore,
　　　Plaintiff (s),

vs.　　　　　　　　　　　　　　　　　CASE NO.CV-1987-1985-
PR

Coastal Industries, Inc.,
　　　Defendant (s).

## ORDER

　　　The above-styled matter comes before the Court on the Plaintiff's, Grace Moore,

PETITION FOR CITATION OF CONTEMPT AND ORDER COMPELLING

REIMBURSEMENT OF MEDICAL EXPENSES AND ATTORNEY FEES. Upon

consideration of the same, the matter is hereby SET for a HEARING on January 23, 2007

at 8:30 a.m. in Courtroom 4C.

　　　Done this the 11 DEC 2006.

　　　　　　　　　　　　　　　　_Charles Price_
　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　CHARLES PRICE, Circuit Judge

cc:　　　Joanna M. Denson
　　　　　CNA Foundation: Jonathan D. Kantor

IN THE CIRCUIT COURT OF MONTGOMERY COUNTY, ALABAMA

GRACE L. MOORE, )
)
PLAINTIFF, )
)
V. )  CIVIL ACTION: CV-87-1985
)
COASTAL INDUSTRIES, INC., )
)
DEFENDANT. )

## PETITION FOR CITATION OF CONTEMPT AND ORDER COMPELLING REIMBURSEMENT OF MEDICAL EXPENSES AND ATTORNEY FEES

COMES NOW the Plaintiff in the above styled cause and moves this Court to issue an Order finding the Defendants in contempt and compelling Defendants to provide and pay for medical treatment to Plaintiff.

This is a case involving workers' compensation. The indemnity portion of the case was settled and finalized by Order of this Court on December 16, 1987. That Order stated that "Doctors, hospital, medical, and rehabilitation benefits shall remain available under the Workmen's Compensation Laws of Alabama."

Plaintiff suffered injuries to her left arm and hand when it was snatched into a machine in a work related incident. Defendant authorized her medical treatment by Dr. Robert B. Currey, orthopedic surgeon, of Selma, Alabama. Dr. Currey retired from his practice in June 2005. Plaintiff requested a replacement physician after Dr. Currey retired and was approved to see Dr. Edward Palmer. Dr. Palmer advised plaintiff that she did not need surgery, therefore she did not need to see a surgeon, but rather a pain management physician. Plaintiff requested a pain management physician from the defendants, but her requests went ignored until she sought counsel. Plaintiff's counsel contacted the workers compensation insurance company CNA sometime in October 2006 and CNA

immediately "found" plaintiff a pain management physician and scheduled an appointment on

November 16, 2006 for plaintiff to see this doctor. This refusal to provide a physician for over a

year interfered with the Plaintiff's reasonable and necessary medical treatment and has caused severe

pain to Plaintiff. Plaintiff had to seek medical treatment on her own and the cost of this medical

treatment was paid for by Medicare. Plaintiff requests this Court to find this Defendant in contempt

for its willful and malicious refusal to abide by the law and the prior Order of this Court.

It is well settled in the law of this state that the employer may not dictate that an employee

may not have treatment recommended by an authorized physician. City of Auburn v. Brown, 638

So.2d 1339 (Ala. Civ. App. 1993); Dunn v. DCH Regional Medical Center, 632 So.2d 485 (Ala. Civ.

App. 1993). The employer has no right to withdraw authorization for medical treatment. Waffle

House, Inc. v. Howard, 794 So.2d 1123 (Ala. Civ. App. 2000). Such treatment cannot be refused

without a medical necessity determination. Ex parte Southeast Alabama Medical Center, 835 So.2d

1642 (Ala. Civ. App. 2002) §25-5-293(q) Code of Alabama 1975. A recovery of costs and

attorney's fees is properly ordered where the conduct is undertaken in bad faith. Ex parte Cowgill,

587 So.2d 1002 (Ala. 1991); Argo Construction Co. v. Rich, 603 So.2d 1078 (Ala. Civ. App. 1992).

WHEREFORE, Petitioner moves this Court to conduct a hearing and issue an Order finding

this Defendant in contempt and issue an Order compelling the Defendant to reimburse plaintiff and

Medicare for the costs of medical treatment, and attorney's fees for the pursuit of this action and

relief.

JONNA M. DENSON [DEN-025]
Attorney for Plaintiff

-2-

**OF COUNSEL:**
HENINGER GARRISON DAVIS, LLC
2224 1st Avenue North
Birmingham, AL 35203
ph. (205) 326-3336
fax (205) 326-3332

**Serve Defendant: (To be Served Via Certified Mail)**

CNA FOUNDATION
Reg. Agent: Jonathan D. Kantor
333 S. Wabash CNA Plaza
Chicago, IL 60685